**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

FILED ___ ENTERED
LOGGED ___ RECEIVED

JUL 1 3 2018

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

**TRACY ARTHUR ALSTON**

    Plaintiff,

v.

                              Case No. 8:17-cv-03278-TDC

**EBERWEIN GROUP, LLC
t/a MERLIN AUTO CLUB**

                              **JURY TRIAL DEMANDED**

    Defendant,

**JOHN LUND KELLER**

    Defendant.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Tracy Alston, and for his complaint against the Defendants Eberwein Group, LLC ("Eberwein") and John Lund Keller ("Keller"), alleges as follows:

### PRELIMINARY STATEMENT

1.    Defendant Eberwein, an auto dealer, sold Plaintiff Alston a lemon for a vehicle. Eberwein deliberately withheld material information from Plaintiff and did not disclose the many problems – some that were potentially life-threatening – in order to deceive Alston into purchasing the vehicle. The vehicle did not last a week before it failed. Alston was driving the car on the highway when it failed and he barely escaped injury. Due to the accident, Alston's insurance paid Eberwein in full and Alston never heard any more about the vehicle for two years. Then, two years after the event, Defendant Keller contacts Alston regarding a purported outstanding debt on the vehicle to Eberwein. Keller's dunning letter was full of misinformation designed to scare Alston into paying the purported debt. After Alston disputed the debt, Keller filed suit in District Court of Prince George's County Maryland and obtained a judgment. Alston

1

has appealed the judgment to the Circuit Court of Prince George's County Maryland and now files this Complaint for statutory and actual damages, costs and attorney's fees pursuant to Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. (hereinafter "FDCPA"), Maryland Consumer Debt Collection Act, Md. Code Ann., Com Law §14-201 *et seq*. ("MCDCA") and Maryland Consumer Protection Act, Md. Code Ann., Com Law §13-101 *et seq*. ("MCPA"), Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq*. ("Magnuson-Moss"), breach of contract, breach of warranty and common law fraud.

## JURISDICTION

2.      The jurisdiction of this Court arises under 15 U.S.C. § 1692k and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) for Plaintiff resides in this District and the conduct complained of occurred in this District.

## PARTIES

3.      The counter-plaintiff is a natural residing in Prince George's County, Maryland.

4.      Eberwein owns a used auto dealership with the trade name Merlin Auto club.

## FACTS

5.      On April 20, 2015, Alston purchased a 2000 Dodge Caravan from Eberwein.

6.      The purchase price for the Caravan was $6,288.73.

7.      As part of the purchase, Alston obtained a warranty that the Eberwein would pay 50% of the labor and parts for certain systems and/or parts that failed within 30-days.

8.      The systems and/or parts covered under the warranty were the engine, transmission, fuel pump, alternator, battery, and all MD inspection items except glass and tires.

9.      Among other systems covered under the warranty that are a Maryland inspection item, is the suspension, which comprises the ball joint, king pin or spindle, wheel bearing, springs and torsion bar and shock absorber or strut.

2

10.     Less than 20 days later, the fuel pump and suspension failed in the Caravan.

11.     The failure of the suspension occurred while Alston was operating the Caravan and caused Alston to fear for his life.

12.     Eberwein did not pay 50% of the costs for the failed fuel pump and suspension. Eberwein was aware of the damage to the Caravan because the Caravan came into Eberwein's possession after the accident.

13.     Eberwein was aware that the damage to the Caravan was covered by the warranty and knew it was obligated pay toward the repairs on the Caravan.

14.     A mechanic for Eberwein told Alston, after inspecting the damages to the Caravan, that Eberwein was responsible for the damages. The mechanic stated Eberwein was responsible for the damages because the mechanic knew the Caravan was in defective condition when Plaintiff purchased the Caravan from Eberwein.

15.     Alston inquired with Eberwein as to the status of the Caravan and further inquired about the prospect of purchasing another car and transferring the existing financing for the Caravan to the new vehicle.

16.     Eberwein ignored Plaintiff's calls and refused to discuss the Caravan. And Eberwein did not respond to Alston's offer to transfer financing to another vehicle. Upon information and belief, Eberwein did not respond to Plaintiff because Eberwein did not want to pay its share of the needed repairs for the Caravan. 17.     Eberwein did not demand payments from Alston for the Caravan. Upon information and belief, Eberwein did not demand payment because Eberwein knew it breached the warranty and could not enforce the contract against the Plaintiff and/or Eberwein knew the payment from State Farm was for complete payment of the debt.

3

18.     Upon information and belief, Eberwein did do some repairs on the Caravan and sold it or used it as transportation for Eberwein or some other, or otherwise made some form of utility of the Caravan.

19.     Alston submitted a claim to his insurance company, State Farm Insurance, and the insurance company and Eberwein dealt with each other directly.

20.     State Farm and Eberwein came to an agreement to payoff the Caravan debt and Eberwein received $2,647.21 from State Farm on or about June 24, 2015.

21.     State Farm's payment was in full satisfaction of the debt.

22.     After receiving the $2,647.21 payment from State Farm, Eberwein did not try to collect any additional amounts from Alston.

23.     Eberwein had Alston's phone number but Eberwein did not attempt to call Alston.

24.     Eberwein had Alston's mailing address but Eberwein did not mail any correspondence to Alston.

25.     For two years Alston did not receive any communication from Eberwein.

26.     By letter dated May 30, 2017, Keller, an attorney collecting on behalf of Eberwein, threatened to sue Alston for the sum of $4,252.79 for the purported Caravan debt.

27.     Defendants' basis for asserting $4,252.79 was fraudulent.

28.     After Alston's payments of $1,300 and the insurance payment of $2,647.21, the debt was either paid in full or there was a remaining balance of $5,743.73.

29.     Defendants overstated and/or inflated the amount owed by $1,456.27.

30.     Defendants also demanded immediate payment despite Plaintiff's right to dispute the payment for 30-days after receiving Keller's letter.

4

31.     Additionally, the subject line of Keller's letter was styled so as to appear that a lawsuit had been filed or was pending against Plaintiff. More specifically, Keller's letter indicated that a case had been filed and waiting to be assigned a case number.

32.     Alston requested validation of the debt by letter dated July 1, 2017.

33.     By letter dated July 7, 2017, Keller verified the inflated amount as being accurate.

34.     On July 28, 2017, the Defendants filed a complaint against Alston.

35.     In the Complaint, the Defendants repeated its false claim that Plaintiff owed $4,252.79 for the purported debt.

36.     Only after Plaintiff threatened to tell the judge that Defendants were attempting to collect a patently fraudulent amount of money, did the Defendants back down from collecting the $4,252.79 and reduced its claim to $2,796.52.

37.     Defendants only reduced the purported amount because they did not feel they could get away with the false claim.

38.     Defendant misrepresented to the judge that they had found the error and made the correction on their own when it fact it was the Plaintiff that challenged the Defendants regarding the false amount and the Defendants knew they could not get away with the false amount.

39.     Although the Defendants know the debt was paid in full in accord and satisfaction, and the Defendants waived any right to collect the debt; Defendants pursued the debt because they knew Plaintiff was unrepresented and could not adequately present his defenses.[1]

## COUNT ONE: BREACH OF WARRANTY

40.     Plaintiff incorporates the preceding allegations by reference.

---

[1] Plaintiff had advised Defendants that he wanted to be represented in this matter by attorney Quinn Lobato. Plaintiff requested the Court postpone the trial but the Defendants objected and the Court denied his request.

41.    This Count is asserted under Magnuson and implied and express warranty of merchantability.

42.    The 2000 Dodge Caravan, as sold to Alston, would not pass in the trade under the description of a "Used" 2000 Dodge Caravan.

43.    The Caravan was advertised and/or represented to be in great condition and safe.

44.    The Caravan was not safe and in good condition. The suspension to the Caravan was falling a part and was temporarily rigged to stay together long enough to deceive a purchase into believing the vehicle was in safe and good condition.

45.    Eberwein's failure to provide merchantable Caravan caused Alston to breakdown while driving, get into an accident and endure severe emotional distress as he fear for his life when the Caravan broke down while driving. Alston was further damaged as he went without a vehicle, incurred a mark on his insurance, and caused the purported outstanding debt, including fees, costs and charges, that Eberwein is now pursuing from Alston.

## COUNT TWO: BREACH OF CONTRACT

46.    Plaintiff incorporates the preceding allegations by reference.

47.    The purchase contract included a warranty from Eberwein to pay 50% of the labor and parts for the suspension and fuel pump failure that occurred within 30-days of the purchase.

48.    The purchase occurred on April 20th 2015 and the fuel pump and suspension failed on or before May 9th 2015.

49.    Eberwein breached the contract by failing to pay 50% of the labor parts for the failure of the fuel pump and suspension on or before May 9th 2015.

50.    As a result of Eberwein's breach of contract, Alston's purported debt to Eberwein was not reduced by the dollar amount required to pay 50% of the labor and parts for the fuel pump and suspension on the Caravan.

6

51.     Plaintiff's breach of contract claim merely seeks monetary damages and is not seeking relief from the state court judgment in favor of the Defendant and against the Plaintiff.

## COUNT THREE: VIOLATIONS OF MCDCA

52.     Plaintiff incorporates the preceding allegations by reference.

53.     Defendants knew Alston was not required to pay for 50% of the costs for the fuel pump and suspension.

54.     In violation of the MCDCA, Com Law §14-202(8), Defendants attempted to collect on the purported debt without deducting 50% of the costs for the fuel pump and suspension.

55.     Defendants knew Alston owed $5,743.73 after he paid his $1,000 down payment.

56.     Defendants knew the debt could be no more than $2,796.52 after Alston made an additional $300 payment and State Farm paid $2,647.21.

57.     Defendants violated §14-202(8) by attempting and claiming a right to collect $4,252.79 when Defendants knew that $2,647.21 was the most Alston could possibly owe.

58.     Defendants knows State Farm paid the debt in full as an accord and satisfaction of the 2000 Dodge Caravan debt.

59.     Defendants knows that by not attempting to collect on the debt from Alston for two years, if any debt remained, the debt was waived or Defendants are estopped from trying to collect from Alston on the debt.

60.     Defendants violated §14-202(8) by attempting to or claiming a right to collect an on the Caravan debt after knowing waiving its right to collect on the debt and/or taking actions that estop Defendants from collecting on the Caravan debt.

61.     Defendants violations caused Alston to endure damages, including but not limited to: pecuniary costs responding to Defendants' debt collection attempts; assessments of debt,

7

interest and fees that he does not owe; and emotional and mental distress from being harassed by Defendants' debt collection actions. Alston's distress includes, but is not limited to: frustration and anger, irritation and annoyance, extremely disturbed and stressed out, internalization of the stress leading to headaches and stomach aches, sleepless nights, eating disorders, etc.

62.    Defendants' foregoing violations render Defendants liable for actual damages in an amount to be determined by the Court pursuant to MCDCA, §14-203.

63.    Plaintiff's MCDCA claim merely seeks monetary damages and does not seek to overturn the state court judgment in favor of Defendant and against him.

## COUNT FOUR: VIOLATIONS OF MCPA

64.    Plaintiff incorporates the preceding allegations by reference.

65.    Eberwein is a "merchant" within the meaning of the MCPA, Com Law §13-101(g) and is subject to all of the MCPA's provisions prohibiting unfair and deceptive trade practices including those in §§13-303 and 13-401.

66.    Eberwein violated the Md. Code Ann., Com Law §13-301(13)(iii) when the Defendant violated the MCDCA at §14-202(8).

67.    Eberwein's sale of the Caravan without disclosing that the Caravan was *not* safe and in good condition was deceptive, unfair and violated MCPA.

68.    Eberwein's warranty states Eberwein would pay 50% of the costs for labor and material for the fuel pump and suspension, however, Eberwein did not honor its warranty.

69.    Eberwein violated §§13-301(1), 13-301(3) and 13-303(4) by engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the MCPA.

8

70.     Eberwein's conduct had the capacity, tendency or effect of deceiving Plaintiff, who in fact was deceived or misled, causing injury and loss through: actual damages, including emotional and mental distress as described in paragraph 49 and costs and attorney fees.

71.     Plaintiff's MCPA claim merely seeks monetary damages and is not seeking relief from the state court judgment or in any way to overturn the state court judgment.

## COUNT FIVE: FRAUD

72.     Counter-Plaintiff incorporates the preceding allegations by reference.

73.     Alston, at time of purchase discussed with Eberwein about the condition of the Caravan and Eberwein stated that there was nothing wrong with the vehicle and that it was in great condition.

74.     These fraudulent statements were made by Larry Eberwein during the afternoon or early evening on April 20, 2015.

75.     Eberwein knew there were problems with the Caravan and knew that its statements to Alston stating otherwise were misrepresentations at the time Alston inquired.

76.     Eberwein intended that Alston rely on its false representations and purchase the Caravan on the belief that the Caravan was in better condition that the vehicle actually was.

77.     Alston did in fact rely on the representations made by Eberwein and purchased the Caravan on the misguided belief that the Caravan was in great condition.

78.     Alston has been damaged as a result of the Caravan not being in the condition that Eberwein represented the Caravan to be in.

79.     Plaintiff's fraud claim merely seeks monetary damages and is not seeking relief from the state court judgment in favor of the Defendant and against the Plaintiff

## COUNT SIX: FDCPA

80.     Plaintiff incorporates the preceding allegations by reference.

9

81. Defendant Keller violated §1692e(2) by misrepresenting the legal status of the debt when Keller represented that a case had been filed against Plaintiff and just waiting to be assigned a case number.

82. Defendant Keller violated §1692e(2) by misrepresenting the amount of debt by overstating the amount that could possibly be owed.

83. Defendant Keller violated §1692e(10) by falsely representing the debt was still outstanding when in fact the debt had been satisfied in full by Plaintiff's insurance company, and further claims to payment were waived by Eberwein's conduct.

84. Defendant Keller violated §1692f(1) by collecting attorney fees when Defendant had no right to collect such fee after the debt was satisfied and/or Eberwein waived its right to collect on the debt.

85. Defendant Keller violated 15 U.S.C. §1692g by contradicting and/or overshadowing the Plaintiff's right to dispute the debt when Keller demanded payment prior to Plaintiff's 30-day time period to request verification of the debt.

86. As a result of the foregoing defendants' conduct, Plaintiff suffered actual damages consisting of both pecuniary expenses, humiliation and other emotional distress.

87. Defendant Keller's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages to Plaintiff in an amount to be determined by the court pursuant to 15 U.S.C. §1692k(a)(1), liable for statutory damages to Plaintiff in an amount of $100 - $1,000 pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

88. Plaintiff's FDCPA does not seek to affect, overturn or impair Defendants' rights from the state court judgment and only seeks to obtain monetary damages from Defendant's deceptive and misleading debt collection actions.

10

## JURY DEMAND

89.    Plaintiff demands a trial by jury on all counts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a) Statutory, actual and punitive damages in the amount of $100,000;

(b) Award costs and reasonable attorney's fees and costs; and

(c) Any such other relief the Court deems just, equitable and proper.

**Date: July 12, 2018**

Respectfully submitted,

**TRACY ALSTON**

Tracy A. Alston
15005 Dahlia Drive
Bowie, MD 20721
(202) 749-9641
*Pro Se Plaintiff*

11